UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Case No. 3:12-cv-330

| | |
|---|---|
| TIMOTHY J. FALK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SWISHER HYGIENE INC.,STEVEN R. BERRARD, andMICHAEL J. KIPP,<br><br>Defendants. | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u> |

## I.     INTRODUCTION

1.      Plaintiff, Timothy J. Falk ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through Plaintiff's counsel, which included, among other things, a review of the Defendants' public documents, conference calls and announcements issued by Swisher Hygiene Inc. ("Swisher" or the "Company"), wire and press releases published by and regarding the Company, and advisories about the Company, and other information readily obtainable in the public domain.

## II.     NATURE OF THE ACTION

2.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Swisher's common stock between March 31, 2011and March 28, 2012 inclusive ("Class Period") for violations of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

1

3.     Swisher provides hygiene and sanitation solutions to customers throughout North America and internationally through a network of company-owned operations, franchises and master licensees.

4.     On March 28, 2012, Swisher issued a press release announcing that it would file a Form 12b-25 with the Securities and Exchange Commission ("SEC") to request an additional 15 days to file its Form 10-K for the year ended December 31, 2011.  In the March 28, 2012 press release, Swisher announced that the delay was due to an ongoing internal review by Swisher's Audit Committee relating to possible adjustments to (1) the accounting for business acquisitions and (2) the calculation of the allowance of doubtful accounts receivable.  These factors led the Company to announce that their financial statements for the quarterly periods ended March 31, 2011, June 30, 2011 and September 30, 2011, as well as other information in the Company's quarterly reports filed with the SEC during those periods, should no longer be relied upon.

5.     Swisher initiated an internal review that lead to the March 28, 2012 announcement after a former employee raised concerns regarding the Company's accounting policies.  After the Company's Audit Committee, independent auditor and outside experts reviewed Swisher's financial reports, the Company announced that it would review the accounting entries relating to each of the 63 acquisitions made during the year ended December 31, 2011.  While the review is ongoing, the Company has already concluded that it will be materially increasing its net loss for at least the first three quarters of 2011.

6.     Based on the announcements of March 28, 2012, Swisher's stock price fell 9.5% from a closing price of $3.05 per share on March 27, 2012 to a closing price of $2.76 per share on March 28, 2012.  Trading in the Company's securities reached its heaviest volume in nearly 4 months.

2

7.     As the market assimilated the news disseminated on March 28, 2012, Swisher's stock price continued its free-fall, dropping an additional $0.33 per share on March 29, 2012, closing at $2.43 per share on unusually heavy trading volume, a daily loss of nearly 12% that brought the two day loss to more than 20%. Trading on April 2, 2012 continued this trend, with a closing price of $2.25, representing a total loss of over 26% from the closing price on March 27, 2012.  Thus, the Company lost more than a quarter of its value in less than one week's time.

8.     Swisher's previously reported revenues for the first three quarters of 2011 were materially overstated and will require restatement to account for the improper accounting of business acquisitions throughout fiscal year 2011, the improper calculation of income generated from doubtful accounts receivable and other false and misleading statements made in the Company's financial statements during the Class Period.  As a result, Plaintiff and other members of the Class purchased Swisher common stock at artificially inflated prices and thereby suffered significant losses and damages.

### III.     JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

11.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

12.     In connection with the acts alleged herein, Defendants, directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## IV.     PARTIES

13.     Plaintiff Timothy J. Falk, as set forth in his accompanying certification incorporated by reference herein, purchased Swisher common stock during the Class Period and has been damaged thereby.

14.     Defendant Swisher is a Delaware corporation with its principle place of business in Charlotte, North Carolina.  Swisher provides hygiene and sanitation solutions to customers throughout North America and internationally through a network of company-owned operations, franchises and master licensees.

15.     Defendant Steven R. Berrard ("Berrard") has been President, Chief Executive Officer and a director of Swisher at all relevant times in the Class Period.  Berrard signed each of the Sarbanes Oxley ("SOX") certifications during the Class Period attesting that Swisher's financial statements were accurate and that its systems of internal controls were adequate.

16.     Defendant Michael J. Kipp ("Kipp") has been Senior Vice President and Chief Financial Officer of Swisher at all relevant times.  Kipp signed each of the SOX certifications during the Class Period attesting that Swisher's financial statements were accurate and that its systems of internal controls were adequate.

17.     Defendants Berrard and Kipp are referred to as the Individual Defendants.

18.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Swisher's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal

4

corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

19. It is appropriate to treat Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

20. As officers and directors of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was and is traded on the NASDAQ, and governed by the provisions of the federal securities laws, Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-

issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

21.     Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Defendants is responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained therein.

22.     Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Swisher common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Swisher's business, operations, management and the intrinsic value of its common stock and (ii) caused Plaintiff and other shareholders to purchase Swisher common stock at artificially inflated prices.

## V.     CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of all those who purchased or otherwise acquired the common stock of Swisher during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, members of their

immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Swisher common shares were actively traded on the NASDAQ exchange.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Swisher or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

25.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

26.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

27.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

        (b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Swisher; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of those damages.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## VI.     SUBSTANTIVE ALLEGATIONS

### A.     False and Misleading Statements

29.     The Class Period in this action begins on March 31, 2011.  On that day, Swisher filed with the SEC a Form 8-K detailing their acquisition of Choice Environmental Services, Inc. ("Choice").  Attached to this filing as Exhibits 99.1, 99.2 and 99.3 respectively, were the Consolidated Financial Statements and Supplemental Schedules of Choice Environmental Services, Inc. and Subsidiaries and Affiliate for September 30, 2010 and 2009, the Consolidated Financial Statements and Supplemental Schedules December 31, 2010 and 2009 (collectively the "Choice Financial Statements"), and the Unaudited Pro Forma Condensed Combined Financial Statements of Swisher Hygiene Inc. and Subsidiaries December 31, 2010 (the "Swisher Pro Forma" and collectively with the Choice Financial Statements the "March 31, 2011 Financials").  Within the March 31, 2011 Financial Statements, Swisher falsely stated, in part, that the Company, calculating a condensed combined pro forma with Choice, had over $55.5 million of cash on hand, accounts receivable of over $13.2 million and total assets of over $236 million.  The March 31, 2011 Financials provide detailed accounting of the Choice acquisition.  Included

are adjustments factoring in goodwill, deferring taxes and tax liabilities "due to temporary differences related to intangibles and property and equipment," proforma adjustments based on the valuation of intangibles, and other specific accounting for the business acquisition of Choice of the type causing the restatement of their financials.

30.     Then, on May 5, 2011, Swisher filed with the SEC a Form 8-K. Attached to this filing as Exhibits 99.1 and 99.2, respectively, were a presentation entitled "2011 Annual Stockholders Meeting May 5, 2011" (the "May 5, 2011 Presentation") and a press release entitled "Swisher Hygiene Provides 2011 Revenue Outlook At Annual Meeting".

31.     Within the May 5, 2011 Presentation, Swisher falsely stated, in part, that as of April 30, 2011, the Company had over $165 million of cash on hand, shareholder equity in excess of $325 million and a total debt to capital ratio of less than 12%.

32.     The May 5, 2011 Presentation also falsely stated, in part, that the Company's annual run rate revenue exceeded $235 million, that the reported revenue for 2011 was expected to exceed $200 million, an increase of 280% over 2010 levels, and that "[r]un rate revenue will continue to grow as new business is added and acquisitions continue."

33.     The May 5, 2011 Presentation also touted the Company's recent acquisitions of ProClean of Arizona, Inc. and Mount Hood Solutions.

34.     The May 5, 2011 press release falsely stated, in part, as follows:

The company currently expects 2011 revenue of approximately $200 million, with current run-rate revenue in excess of $230 million.

35.     The May 5, 2011 press release also contained the following false statements from Defendant Berrard:

We recognize our historical financial performance is not indicative of the rapid progress we are making acquiring businesses in our large addressable

9

market. As we continue to acquire additional businesses, we expect to deliver significant efficiencies and cost-savings as we integrate these businesses into our platform. More importantly, we continue to identify and pursue attractive synergies and cross-selling opportunities across all of our service offerings as customers get introduced to our expanded service offerings.

36.     On May 16, 2011, Swisher announced its results for the 2011 first quarter in a press release entitled "Swisher Hygiene Announces Results for the Three-Month Period Ended March 31, 2011." Within the May 16 release, the Company falsely stated, in part, as follows:

**First Quarter 2011 Highlights and Subsequent Events**

• Total revenue for the three months ended March 31, 2011 increased by 86% to $27.4 million compared to $14.7 million for the same period in 2010, led by an 89% increase in products revenue and a 139% increase in services revenue. Total revenue for the first quarter 2011 was up 55% sequentially from the fourth quarter of 2010. Excluding the impact of acquisitions, total revenue increased 15% from the same period of the prior year.
• Announced its outlook at annual meeting of $200 million in revenue for full year 2011, with current annualized Run-Rate Revenue in excess of $230 million.
• Raised over $195 million of equity in private placements with well-known and respected U.S. and Canadian institutions, and entered into a senior secured revolving credit facility with Wells Fargo Bank, N.A. providing up to $100 million of borrowing capacity. As of April 30, 2011, Swisher Hygiene had over $165 million in cash on its balance sheet.
• Completed nine acquisitions of hygiene and chemical companies and four acquisitions of franchises in the first quarter of 2011.
• In March 2011, acquired Choice Environmental Services, Inc., a Florida-based residential and commercial solid waste services company.
• In May 2011, acquired ProClean of Arizona, Inc. and Mt. Hood Solutions, the leading independent chemical providers in the Southwest U.S. and Northwest U.S., respectively.
• Commenced trading on the NASDAQ Global Market.

\*     \*     \*

**First Quarter 2011 Results**

For the three months ended March 31, 2011, Swisher Hygiene reported total revenue of $27.4 million, an 86% increase from $14.7 million in the same prior-year period and a 55% sequential increase from the fourth quarter of 2010. The

increase was primarily due to an 89% increase in products revenue due to the acquisitions made since August 2010 of eight franchisees and 15 independent hygiene and chemical companies, as well as a 139% increase in service revenue, largely attributable to the acquisition of Choice Environmental Services, Inc. Excluding the impact of acquisitions, total revenue increased 15% from the prior-year period.

Total costs and expenses for the three months ended March 31, 2011 increased by 106% to $33.0 million, compared to $16.0 million in the same prior-year period. Excluding acquisition and merger-related costs of $1.3 million, total costs and expenses increased 98%, compared to the same prior-year period.

The increase was primarily due to an 89% increase in selling, general and administrative costs resulting in part from the acquisitions made since August 2010 of eight franchisees and 15 independent hygiene and chemical companies, as well as the expansion of Swisher Hygiene's corporate, field and distribution sales organization to accelerate growth in the company's core chemical program. In addition, route expenses increased 124% caused by the addition of routes from completing the aforementioned acquisitions.

Excluding the impact of acquisitions, for the three months ended March 31, 2011 compared to the same prior-year period, total cost of sales were up 15%, total route expenses increased 21%, SG&A expenses increased 51% and depreciation and amortization increased 47%.

Net loss for the three months ended March 31, 2011 was $3.2 million, compared to a net loss of $1.6 million in the prior-year period. Excluding acquisition and merger-related costs of $1.3 million in the first quarter of 2011, net loss for the three months ended March 31, 2011 was $1.9 million.

Adjusted EBITDA for the three months ended March 31, 2011 was $1.0 million, compared to $0.3 million in the prior-year period

37.    The May 16, 2011 press release also contained the following false statement from

Defendant Berrard:

Our first quarter 2011 results are evidence of the opening stages of our strategy of rapid expansion through acquisitions and organic growth with an 86% growth in revenue from the same prior-year period, and a 55% sequential increase in revenue compared to our fourth quarter of 2010. This is just the beginning of the increase in revenue that we anticipate reporting over the next few quarters and we believe the second half of the year should more accurately reflect how well our strategy is working in terms of revenue growth, margin expansion and leveraged operating costs. Our company will continue to use its capital wisely in order to maintain and extend its growth strategy going forward.

11

38.    On May 16, 2011, the Company filed its Form 10-Q, certified by Defendants

Berrard and Kipp, which repeated the revenue numbers set forth in the press release issued by

Swisher on May 16, 2009 and falsely stated:

> CONTROL AND PROCEDURES.
>> We carried out an evaluation, under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, of the effectiveness of our disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) as of March 31, 2011. Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as March 31, 2011.

39.    The Company's May 16, 2011 10-Q also contained, attached to the filing as

Exhibits 31.1 and 32.1, respectively, false and misleading SOX certifications executed by

Defendants Berrard and Kipp.  These certifications stated:

> 1. I have reviewed this Quarterly Report on Form 10-Q of Swisher Hygiene Inc.;
> 2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
> 3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;
> 4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:
>
>> a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;
>>
>> c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

40.    On August 15, 2011, Swisher issued a press release entitled "Swisher Hygiene Announces Results for the Three and Six-Month Periods Ended June 30, 2011" and subtitled "241% Increase in Revenue; 22% Organic Growth Rate Compared to Prior-Year Period [-] Company Raises Current Year Revenue Outlook".  Within the August 15, 2011 release, the Company falsely stated that:

**Second Quarter 2011 Highlights and Subsequent Events**

•    Total revenue for the three months ended June 30, 2011 increased by 241% to $51.7 million compared to $15.2 million for the same period in 2010, led by a 227% increase in product revenue and a 406% increase in service revenue. Excluding the impact of acquisitions, organic revenue for the quarter increased 22% from the same period in 2010.

•    Total revenue for the second quarter 2011 was up 89% sequentially from the first quarter of 2011, and up 192% from the fourth quarter of 2010.

•    Adjusted EBITDA was $3.0 million in the second quarter of 2011 versus an Adjusted EBITDA loss of $0.3 million for the prior-year period and compared to an Adjusted EBITDA loss of $1.0 million for the first quarter of 2011.

•    Adjusted EBITDA margins in the second quarter of 2011 were 5.8%, compared to Adjusted EBITDA margins of -3.5% in the first quarter of 2011, -

13

17.1% in the fourth quarter of 2010 and -2.2% in the prior-year period.

• Raised revenue outlook for full year 2011 to $220 million, with annualized Run-Rate Revenue now in excess of $280 million.

• Closed on $76 million of additional equity capital in a private placement — the final tranche of a total of $191 million of equity raised in private placements, net of issuance costs, during the first half of 2011. As of June 30, 2011, Swisher Hygiene had over $112 million in cash on its balance sheet.

• Since March 31, 2011, Swisher Hygiene has completed 27 acquisitions, including 23 chemical, linen and waste companies and four franchises.

• In July 2011, acquired Sanolite Corporation, the leading independent hygiene and chemical provider in the Northeast. Along with the previous acquisitions of ProClean of Arizona, Inc. and Mt. Hood Solutions, the transaction completed Swisher Hygiene's transition to a regional operating structure.

• In July 2011, in connection with the implementation of the regional operating structure, initiated approximately $5 million in cost and expense reductions that will be fully implemented in the third quarter, as well as regional chemical manufacturing initiatives that are expected to generate a 200 basis point sequential reduction in chemical cost of sales over the next four quarters.

• In August 2011, completed equipment and other financing agreements that will provide Swisher Hygiene with up to $62.5 million of additional available capital.

*     *     *

**Second Quarter 2011 Results**

For the three months ended June 30, 2011, Swisher Hygiene reported total revenue of $51.7 million, a 241% increase from $15.2 million in the prior-year period and an 89% sequential increase from the first quarter of 2011. The increase was due to a 227% increase in product revenue, primarily due to the acquisitions made since August 2010 of 12 franchisees and 38 independent chemical, linen and waste companies, as well as a 406% increase in service revenue, largely attributable to the March 2011 acquisition of Choice Environmental Services, Inc. as well as increased chemical revenue. Excluding the impact of acquisitions, organic revenue increased 22% from the same period of the prior year.

Total costs and expenses for the three months ended June 30, 2011 increased by 254% to $58.6 million, compared to $16.6 million in the same prior-year

14

period. Excluding acquisition and merger-related costs of $2.8 million, total costs and expenses increased 236% compared to the prior-year period.

41.     Additionally, the August 15, 2011 press release contained the following statement from Defendant Berrard:

> We have consistently grown our Adjusted EBITDA margins to 5.8% in the second quarter of 2011 from negative 17.1% in the fourth quarter of 2010. We have generated triple-digit revenue growth from the prior-year period, and an 89% sequential improvement in revenue from the first quarter of 2011. Importantly, our revenue growth was not just from acquisitions — we generated organic revenue growth of 22%, evidence that our cross-selling and new account initiatives are beginning to pay dividends.

42.     On August 15, 2011, Swisher filed Form 10-Q with the SEC reporting its Second Quarter 2009 financial results, which repeated the same revenue numbers as set forth in the August15, 2011 press release. The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶38, *supra,* and, attached to the filing as Exhibits 31.1 and 32.1, respectively, SOX certifications executed by Defendants Berrard and Kipp substantially similar to the certifications referenced in ¶39, *supra*.

43.     On November 14, 2011, Swisher issued a press release entitled "Swisher Hygiene Announces Results for the Three and Nine-Month Periods Ended September 30, 2011". Within the November 14, 2011 release, the Company falsely announced that:

**Third Quarter 2011 Highlights**

• Total revenue for the three months ended September 30, 2011 increased by 318% to $67.2 million compared to $16.1 million for the same period in 2010, led by a 353% increase in product revenue and a 438% increase in service revenue.

• Organic revenue growth for the quarter was 29% as compared with the same period in 2010.

15

- Total revenue for the third quarter 2011 was up 30% sequentially from the second quarter of 2011, and up 280% from the fourth quarter of 2010.

- Adjusted EBITDA for the third quarter 2011 was $5.3 million versus an Adjusted EBITDA loss of $1.1 million for the prior-year period and compared to Adjusted EBITDA of $3.0 million for the second quarter of 2011.

- Adjusted EBITDA margin in the third quarter of 2011 was 7.8%, compared to Adjusted EBITDA margins of 5.8% in the second quarter of 2011, -3.5% in the first quarter of 2011 and -6.7% in the third quarter of 2010.

- Revenue outlook for full year 2011 is expected to exceed $220 million, with annualized Run-Rate Revenue now in excess of $320 million.

- Since June 30, 2011, completed 28 acquisitions, including 26 chemical, linen and dust control companies and two franchises.

- Completed acquisition of Sanolite, the leading independent hygiene and chemical provider in the Northeast which enabled Swisher Hygiene to complete its regional operating structure while significantly strengthening its chemical sales and service capabilities in the region.

- Acquired Daley International, one of the largest independent chemical manufacturers in the U.S. The acquisition will allow Swisher Hygiene to significantly increase its internal product manufacturing capability, while also enabling Swisher Hygiene to provide a broader array of products for its existing customers and those in additional vertical markets.

- In August 2011, completed equipment and other financing agreements that will provide Swisher Hygiene with up to $62.5 million of additional available capital.

*    *    *

**Third Quarter 2011 Results**

For the three months ended September 30, 2011, Swisher Hygiene reported total revenue of $67.2 million, a 318% increase from $16.1 million in the prior-year period and a 30% sequential increase from the second quarter of 2011. Product revenue increased 353% primarily due to the acquisitions of chemical, linen and waste companies since the end of the third quarter of 2010, and service revenue increased 438%, largely attributable to the March 2011 acquisition of Choice Environmental Services, Inc. Excluding the impact of acquisitions, organic revenue increased 29% from the same period of the prior year.

16

Total costs and expenses for the three months ended September 30, 2011 increased by 256% to $70.6 million, compared to $19.8 million in the prior-year period. Excluding acquisition and merger-related costs of $0.6 million in the three months ended September 30, 2011 and $1.4 million in the prior-year period, total costs and expenses increased 280% compared to the prior-year period.

44.    The November 14, 2011 press release also contained the following false statement from Defendant Berrard:

We continued to move in the right direction in the third quarter of 2011, with another quarter of triple-digit revenue growth, a 30% sequential improvement in revenue from the second quarter, as well as reporting over $5 million in positive Adjusted EBITDA. Our Adjusted EBITDA margin rose once again to 7.8% as we are realizing the efficiencies of our new regional operating structure and we are approaching our 2011-2012 target Adjusted EBITDA margin range of 10 to 18%. Organic revenue growth of 29% — a third consecutive quarter of double-digit organic growth — shows once again that our cross-selling and new account initiatives are working.

45.    On November 14, 2011, Swisher filed Form 10-Q with the SEC, reporting its Third Quarter 2011 financial results, repeating the revenue numbers as set forth in the November 14, 2011 press release. The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶38, *supra,* and, attached to the filing as Exhibits 31.1 and 32.1, respectively, SOX certifications executed by Defendants Berrard and Kipp were substantially similar to the certifications referenced in ¶39, *supra*.

46.    Each of the foregoing statements regarding Swisher's assets, revenues, losses and internal controls were materially false and misleading when made. In violation of generally accepted accounting principles ("GAAP"), Swisher improperly recognized revenue and improperly understated losses in the quarters in which they were recorded and thereby materially overstated the Company's revenues, earnings and earnings per share. Swisher further misrepresented its internal controls as being adequate when, in fact, they were inadequate and permitted the improper recordation of profit and loss.

17

**B.**     <u>**Swisher Discloses Improper Accounting**</u>

47.     On March 28, 2012, Swisher announced that it would be unable to timely report

its 2011 year-end financial results when it issued a press release entitled "Swisher Hygiene

Announces it Will File Form 12B-25 for Extension to File Its 2011 Annual Report on Form 10-

K: Delay in Filing Related to Possible Restatements of First, Second and Third Quarter 2011

Results".  In part, the press release stated:

> The delay in filing is due to an ongoing internal review by Swisher Hygiene's
> Audit Committee primarily relating to possible adjustments to (1) the accounting
> for business acquisitions and (2) the calculation of the allowance of doubtful
> accounts receivable. On March 21, 2012, the Board of Directors of Swisher
> Hygiene concluded that the Company's previously issued interim financial
> statements for the quarterly periods ended June 30, 2011 and September 30, 2011,
> and the other financial information in the Company's quarterly reports on Form
> 10-Q for the periods then ended, should no longer be relied upon. Subsequently,
> on March 27, 2012, the Audit Committee concluded that the Company's
> previously issued interim financial statements for the quarterly period ended
> March 31, 2011 should no longer be relied upon. The Company refers to the
> interim financial statements and the other financial information described above
> as the "Prior Financial Information."

> As of today's date, the Audit Committee's review is not complete. Nevertheless,
> the Audit Committee believes material adjustments to the Prior Financial
> Information may be required and the Company may need to file restatements of
> its first, second and third quarter financial statements.  While the amount of any
> such adjustments cannot be estimated with reasonable certainty at this time, to
> date, the Audit Committee has preliminarily identified an aggregate of
> approximately $3.6 million in increases to net loss before income taxes for the
> affected periods.

> The Company is working with its Audit Committee, the Audit Committee's
> outside experts and the Company's independent auditor to determine the full
> impact of these potential adjustments on the Prior Financial Information.
> However, until the review is complete and a final determination is made, the
> Company cannot provide further assurance regarding the complete impact of any
> adjustments on its results of operations for the affected periods, and the Company
> cannot provide assurance that the adjustments identified to date are representative
> of the adjustments that will be required when the review is complete.
> Furthermore, the Company cannot assure that the review will not identify further
> adjustments that may be required.

*    *    *

> The Company plans to complete its internal review and file its Annual Report on Form 10-K for the year ended December 31, 2011 as promptly as possible; however, the Company cannot provide assurance that it will be able to file its Form 10-K within the time period prescribed by Rule 12b-25.

48.     The Company conducted a conference call shortly after releasing the press release on March 28, 2012.  During that call, the Company reiterated the statements made in its earlier press release.

49.     On March 28, 2012, the Company also filed a Current Report on a Form 8-K with the SEC.  In addition to the information disclosed in their press release noted *supra* in ¶47, the Form 8-K stated:

> The Audit Committee initiated its review after an informal inquiry by the Company regarding a former employee's concerns with certain of the Company's accounting policies. The Company first initiated the informal inquiry by requesting that both the Audit Committee and the Company's independent auditor look into the matters raised by the former employee. Following this informal inquiry, the Company's senior management and its independent auditor advised the Chairman of the Company's Audit Committee regarding the matters. Subsequently, the Audit Committee determined that an independent review of the matters presented by the former employee should be conducted. During the course of its independent review, and due in part to the significant number of acquisitions made by the Company, the Audit Committee determined it would be in the best interest of the Company and its stockholders to review the accounting entries relating to each of the 63 acquisitions made by the Company during the year ended December 31, 2011.

> In connection with the Audit Committee's independent review, the Company is evaluating its internal control over financial reporting, and particularly controls relating to the estimated allowance for doubtful accounts calculation and controls relating to accounting for business acquisitions, to determine if any significant deficiencies or material weaknesses in such controls caused or contributed to any potential adjustments that may be required.

> The Company's Audit Committee and Board of Directors have discussed the matters disclosed in this filing with the Company's independent auditors.

> The Company plans to complete its internal review and file its Annual Report on Form 10-K for the year ended December 31, 2011 as promptly as possible.

19

Although the Company will seek to extend the time required to file its Form 10-K in accordance with Rule 12b-25 under the Securities Exchange Act of 1934, as amended, there can be no assurance that the Company will be able to file its Form 10-K within the time period prescribed by Rule 12b-25.

50.     On March 28 and 29, 2012, as the market absorbed the disclosures about Swisher's lack of confidence in and need to restate financials for the previous three quarters and the Company's resultant inability to timely file its Form 10-K with the SEC, Swishers' stock price plummeted.  The Company's shares lost 9.5% of their value on March 28 and an additional 12% the next day, falling from a closing price of $3.05 on March 27 to $2.76 on March 28, then to $2.43 on March 29, each day representing trading volume above anything seen in nearly four months.  Trading on April 2, 2012 closed at $2.25, representing a total loss of over 26% from the closing price on March 27, 2012 in less than one week after the Company publicly announced that its financial statements for the previous three fiscal quarters could no longer be relied upon.

51.     On April 12, 2012, Swisher issued a press release and filed a Form 8-K which announced that the filing of its Annual Report on Form 10-K for the year ended December 31, 2011 would be delayed beyond the April 16, 2012 extended due date as a result of the previously disclosed internal review being conducted by the Company's Audit Committee.

52.     On April 11, 2012, Swisher Hygiene received a letter from NASDAQ indicating that it is not in compliance with the filing requirements for continued listing under NASDAQ Listing Rule 5250(c)(1). The NASDAQ letter notes that Swisher Hygiene is required to submit a plan to regain compliance with NASDAQ's filing requirements for continued listing within 60 calendar days of the date of the NASDAQ notification letter. Upon acceptance of Swisher Hygiene's compliance plan, NASDAQ is permitted to grant an extension of up to 180 days from the Form 10-K's initial due date for Swisher Hygiene to regain compliance with NASDAQ's filing requirements for continued listing. Swisher Hygiene intends to submit a compliance plan

20

within the 60 calendar day period. During the process of regaining compliance with NASDAQ, Swisher Hygiene expects that its common stock will continue trading on NASDAQ under the symbol "SWSH."  On May 17, 2012, the Company issued a press release and filed a Form 8-K which announced that the filing of its Form 10-Q for the quarter ended March 31, 2012 had been delayed beyond the May 15, 2012 due date as a result of the previously disclosed internal review being conducted by Swisher's Audit Committee. The press release noted the following information relating to the delayed filing:

On May 17, 2012, Swisher Hygiene announced that the Audit Committee has substantially completed the investigative portion of its internal review and is working with its outside professionals, Swisher Hygiene and Swisher Hygiene's independent auditor to finalize a determination of adjustments to be made for each of the quarterly periods ended March 31, 2011, June 30, 2011, and September 30, 2011. While the amount of any such adjustments cannot be estimated with reasonable certainty at this time, to date, the Audit Committee has preliminarily identified an aggregate of approximately $4.6 million in increases to net loss before income taxes for the affected periods. However, until the adjustments have been fully reviewed and finalized, Swisher Hygiene cannot provide further assurance regarding the complete impact of any adjustments on its results of operations for the affected periods, and Swisher Hygiene cannot provide assurance that the adjustments identified to date are representative of the adjustments that will be required when the adjustments are finalized.

Additionally, Swisher Hygiene cannot provide assurance that the review will not identify further adjustments that may be required, including as a result of the independent auditor's review and audit or Swisher Hygiene's further analysis. Swisher Hygiene is working to file the Form 10-K, restated Form 10-Qs for the affected periods and the Form 10-Q for the quarter ended March 31, 2012 as promptly as possible; however, Swisher Hygiene can provide no assurance as to when it will complete these filings.

In connection with the internal review, on May 14, 2012, Swisher Hygiene's Board of Directors (the "Board"), based on the recommendation of the Audit Committee, determined that Michael Kipp, Swisher Hygiene's Senior Vice President and Chief Financial Officer, be separated from Swisher Hygiene, effective immediately. Also, the Board, based on the recommendation of the Audit Committee, determined that two additional senior accounting personnel be separated from Swisher Hygiene, effective immediately. In making these employment determinations, the Board did not identify any conduct by these employees intended for or resulting in any personal benefit.

Swisher Hygiene has commenced a search process for a new CFO and other accounting staff. During this time, Steven R. Berrard, Swisher Hygiene's President and Chief Executive Officer, will also serve as interim CFO.

On May 15, 2012, Swisher Hygiene received a letter from NASDAQ indicating that it is not in compliance with the filing requirements for continued listing under NASDAQ Listing Rule 5250(c)(1). As previously noted on April 11, 2012, Swisher Hygiene received a non-compliance letter from NASDAQ in conjunction with Swisher Hygiene's inability to timely file its Form 10-K. Pursuant to the April 11, 2012 and May 15, 2012 letters from NASDAQ, Swisher Hygiene is required to submit a plan to regain compliance with NASDAQ's filing requirements for continued listing by June 11, 2012. Upon acceptance of Swisher Hygiene's compliance plan, NASDAQ is permitted to grant an extension of up to 180 days from the Form 10-K's initial due date for Swisher Hygiene to regain compliance with NASDAQ. Swisher Hygiene intends to submit a compliance plan by June 11, 2012. During the process of regaining compliance with NASDAQ, Swisher Hygiene expects that its common stock will continue trading on NASDAQ under the symbol "SWSH."

## VII.  LOSS CAUSATION / ECONOMIC LOSS

53.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about Swisher's accounting misconduct and its lack of operational and financial controls was revealed, the Company's common stock declined as the prior artificial inflation no longer propped up its stock price. The decline in Swisher's common stock price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, *i.e.,* damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's common stock price and the subsequent significant decline in

the value of the Company's common stock when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

54. At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Swisher's business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Swisher's common stock price to be artificially inflated. Plaintiff and other Class members purchased Swisher's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

## VIII. <u>NO SAFE HARBOR</u>

55. The statutory safe harbor under the Private Securities Litigation Reform Act of 1995, which applies to forward-looking statements under certain circumstances, does not apply to any of the allegedly false and misleading statements pled in this complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not adequately identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements pled herein, Defendants are liable for those false forward-looking statements because, at the time each of those forward-looking statements were made, the

23

particular speaker had actual knowledge that the particular forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of Swisher who knew that those statements were false, misleading or omitted necessary information when they were made.

## COUNT I
### (Against All Defendants)
### Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5

56.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder.

58.    During the Class Period, Defendants, singly and in concert, directly engaged in a common plan, scheme and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and course of business which operated as fraud and deceit upon Plaintiff and the other members of the Class, and failed to disclose material information in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff and the other members of the Class.  The purpose and effect of said scheme, plan and unlawful course of conduct was, among other things, to induce Plaintiff and the other members of the Class to purchase Swisher's common stock during the Class Period at artificially inflated prices.

59.    As a result of the failure to disclose material facts, the information Defendants disseminated to the investing public was materially false and misleading as set forth above, and the market price of Swisher's common stock was artificially inflated during the Class Period.  In ignorance of the false and misleading nature of the statements described above and the deceptive

24

and manipulative devices and contrivances employed by Defendants, Plaintiff and other members of the Class relied, to their detriment, on the integrity of the market price of Swisher's common stock in purchasing shares of the Company. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid.

60.    Plaintiff and other members of the Class have suffered damages as a result of the unlawful conduct alleged herein in an amount to be proved at trial.

61.    By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) failed to disclose material information; or (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class in connection with their purchases of Swisher's common stock during the Class Period.

**COUNT II**
**(Against the Individual Defendants)**
**Violations of Section 20(a) of the Exchange Act**

62.    Plaintiff repeats and re-alleges each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

63.    Defendants, by virtue of their positions, stock ownership and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the Exchange Act.

64.    Defendants had the power and influence – and exercised such power and influence – as to cause Swisher to engage in the unlawful conduct and practices complained of herein.

65.     By reason of the conduct alleged in Count I of this Complaint, Defendants are jointly and severally liable to the same extent as the Company for the aforesaid unlawful conduct, and are liable to Plaintiff and to the other members of the Class for the damages which they suffered in connection with their purchases of Swisher common stock during the Class Period.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for judgment as follows:

(a)     Determining this action to be a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against Defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

(c)     Awarding Plaintiff the fees and expenses incurred in this action including reasonable allowance of fees for Plaintiff's attorneys and experts;

(d)     Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)     Granting such other and further relief as the Court may deem just and proper.

# X.    JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  May 24, 2012

By:    /s/ Gary W. Jackson _____
Gary W. Jackson, NC State Bar No. 13976
Sam McGee, NC State Bar No. 25343
**JACKSON & MCGEE, LLP**
225 E. Worthington Avenue, Suite 200
Charlotte, North Carolina 28203
Telephone: (704) 377-6680
Facsimile: (704) 377-6690
gjackson@ncadvocates.com
smcgee@ncadvocates.com

**ROY JACOBS & ASSOCIATES**
Roy L. Jacobs
60 East 42nd Street
46th Floor
New York, NY 10165
Telephone:  (212) 867-1156
Facsimile:  (212) 504-8343
rjacobs@jacobsclasslaw.com

**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz
60 East 42nd Street
46th Floor
New York, NY 10165
Telephone:  (212) 685-0969
Facsimile:  (617) 685-2306
lpaskowitz@pasklaw.com

*Attorneys for the Plaintiff*